United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES W. HARRINGTON,

               Petitioner,

    v.

D. ADAMS, Warden,

               Respondent.

_____/

No. C 02-4850 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer with a memorandum of points and authorities in support, and has lodged exhibits with the court. Petitioner has responded with a traverse. The matter is submitted.

## BACKGROUND

On October 13, 1998, the Mendocino County District Attorney filed an amended complaint charging Petitioner, Charles Harrington, with one count of continuous sexual abuse of a minor (Cal. Pen. Code § 288.5), three counts of oral copulation with a minor (Cal. Pen. Code § 288a(b)(1)), and three counts of genital penetration of a minor with a foreign object (Cal. Pen. Code § 289(h)). Exh. 4 (Clerk's Transcript) at 3-14.[1] On October 23, 1998, Petitioner waived preliminary hearing and the amended complaint was deemed to be the criminal information. Exh. 4 at 9, 15. On February 21, 2000, a jury found Petitioner guilty on all counts. Exh. 4 at 398-406. The court sentenced Petitioner to a term of twenty years in state prison. Exh. 4 at 488, 650-652.

The California Court of Appeal affirmed Petitioner's conviction, and the California Supreme Court denied review. Exh. 8, 10. Petitioner's subsequent petition for a writ of

---

[1] Citations to "Exh." are to the record lodged with the court by the Attorney General.

United States District Court

For the Northern District of California

habeas corpus was denied by the California Supreme Court.  Exh. 12.

The following facts are distilled from the opinion of the California Court of Appeal.  *See* Exh. 8 at 2-3.  On October 8, 1998, a police officer was dispatched to Ukiah High School, Ukiah, California, after a teacher had received a report from one of her students about possible sexual molestation.  The police officer conducted an interview with Suzanne R., which led to Petitioner being criminally charged and tried in the instant proceeding.

The evidence revealed that Petitioner began dating Suzanne's mother, Doreen, in approximately 1990.  At trial, Suzanne described a history of sexual abuse perpetrated by Petitioner over an eight-year period beginning when she was seven years old.  Suzanne testified that she had to orally copulate Petitioner "two to three times a week."

While actual sexual intercourse had never taken place, Suzanne was required to perform oral sex on Petitioner hundreds of times.  Additionally, he orally copulated and digitally penetrated Suzanne many times.  Petitioner told Suzanne that she would never be believed if she reported the abuse because he was a former law enforcement officer.  Suzanne also described how he used fear and intimidation to control the entire family.  After Suzanne turned sixteen years of age, Petitioner began stating his desire to have sexual intercourse with her.  She testified at trial that she would rather "kill myself first," and she reported the sexual abuse to her teacher.

On October 13, 1998, Barbara S. contacted authorities after reading about Petitioner's arrest on sex offenses.  She testified at trial that she, too, was a victim of Petitioner's sexual misconduct about twenty-five years earlier.  The sexual abuse occurred from 1969, when Barbara was nine years old, until 1977, after her mother married Petitioner.  The acts included oral copulation, digital penetration, and sexual intercourse.  At trial, Barbara estimated that she had been forced to engage in between 200-300 sexual acts with Petitioner.  Petitioner told Barbara that if she reported the abuse, he would kill her mother in front of her and then kill her. By 1977, when she reported the molestation, Barbara had attempted suicide three times, had been hospitalized for mental health

2

United States District Court

For the Northern District of California

1   problems, and had run away from home to stop the sexual abuse.  She reported Petitioner

2   to the authorities because she did not want to be returned home, but criminal proceedings

3   were never pursued.  At trial she described herself as a drug addict and an alcoholic.

4       Petitioner testified in his own defense.  He denied having any sexual contact with

5   Suzanne or his former stepdaughter, Barbara.  He testified that at the time of his arrest, he

6   weighed approximately 540 pounds.  He claimed that as a result of his weight, he was

7   impotent and unable to perform sexually.

8       After Petitioner was convicted, he brought a motion for a new trial primarily based on

9   the argument that the court erred in admitting Barbara's testimony under California

10  Evidence Code section 1108.  The motion was denied and Petitioner received a prison

11  term of twenty years.

12                          **STANDARD OF REVIEW**

13      A district court may not grant a petition challenging a state conviction or sentence on

14  the basis of a claim that was reviewed on the merits in state court unless the state court's

15  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

16  unreasonable application of, clearly established Federal law, as determined by the

17  Supreme Court of the United States; or (2) resulted in a decision that was based on an

18  unreasonable determination of the facts in light of the evidence presented in the State court

19  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

20  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

21  while the second prong applies to decisions based on factual determinations, *Miller-El v.

22  Cockrell*,  537 U.S. 322, 340 (2003).

23      A state court decision is "contrary to" Supreme Court authority, that is, falls under the

24  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

25  reached by the [Supreme] Court on a question of law or if the state court decides a case

26  differently than the [Supreme] Court has on a set of materially indistinguishable facts."

27  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

28

3

**United States District Court**
For the Northern District of California

of" Supreme Court authority, according to the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, here that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

## DISCUSSION

As grounds for habeas relief, Petitioner asserts the following claims: (1) his due process and equal protection rights were violated by admission of evidence of prior sexual offenses; (2) the trial court violated his Sixth and Fourteenth Amendment rights in admitting certain "propensity" evidence; (3) his Sixth and Fourteenth Amendment rights were violated by the trial court's giving revised CALJIC 2.50.1 and 2.01; (4) his Sixth and Fourteenth Amendment rights were violated by the trial court's giving CALJIC 17.41.1; and (5) his rights to due process and effective assistance of counsel were violated by the trial court's refusal to appoint him a new lawyer. In its Order to Show Cause, this court dismissed Petitioner's CALJIC 17.41.1 claim as without merit. Accordingly, the court shall consider his remaining claims in turn.

///

United States District Court

For the Northern District of California

1  **A.     Admission of Evidence of Prior Sexual Offenses**

2          Petitioner first contends that the trial court's admission under California Evidence

3  Code section 1108 of uncharged sex acts violated his right to due process.  This section

4  permits a trial court to admit prior sexual offenses as evidence of a propensity to commit

5  such acts.  Cal. Evid. Code § 1108.  Petitioner argues that by abolishing a longstanding

6  rule against admission of disposition evidence, section 1108 contravenes the presumption

7  of innocence and his right to a fair trial.

8          A state court's admission of evidence is not subject to federal habeas review unless

9  the evidentiary ruling violates federal law, either by infringing upon a specific federal

10  constitutional or statutory provision or by depriving the defendant of the fundamentally fair

11  trial guaranteed by due process.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  There are no

12  published federal opinions which have addressed the constitutionality of section 1108.

13  However, the Ninth Circuit has held that Federal Rule of Evidence 414, which is analogous

14  to section 1108, does not violate the right to due process.  *United States v. LeMay*, 260

15  F.3d 1018, 1027 (2001).  Rule 414 states that "[i]n a criminal case in which the defendant is

16  accused of an offense of child molestation, evidence of the defendant's commission of

17  another offense or offenses of child molestation is admissible, and may be considered for

18  its bearing on any matter to which it is relevant."  *Id.* at 1024.  The court held in *LeMay* that

19  Rule 414 is not unconstitutional because it is limited in its function by Rule 403.  *Id.* at

20  1026-27.  Rule 403 directs judges to exclude any evidence submitted under Rule 414 that

21  is more prejudicial than probative.  *Id.* at 1027.  The court reasoned that this balancing

22  process eliminates any due process concerns about Rule 414, stating: "[a]s long as the

23  protections of Rule 403 remain in place to ensure that potentially devastating evidence of

24  little probative value will not reach the jury, the right to a fair trial remains adequately

25  safeguarded."  *Id.* at 1026.

26          The reasoning of *LeMay* applies equally to this case because section 1108 of the

27  ///

28

                                                    5

**United States District Court**
For the Northern District of California

1   California Evidence Code is similar to Rule 414.[2]  Evidence that is admissible under section

2   1108 is limited by California Evidence Code section 352.  Cal. Evid. Code § 1108(a).

3   Section 352 parallels Rule 403 of the Federal Rules of Evidence because it permits a trial

4   judge to exclude evidence when its probative value is substantially outweighed by its

5   prejudicial effect.[3]  Just as Rule 403 did in *LeMay*, section 352 ensures that evidence

6   admitted under section 1108 will not infringe on the right to a fair trial guaranteed under the

7   Due Process Clause.

8        The court of appeal rejected Petitioner's claim on this issue, relying on the California

9   Supreme Court opinion in *People v. Falsetta*, 21 Cal. 4th 903 (1999).  Exh. 8 at 5.  In

10  *Falsetta*, the state supreme court held that the admission of propensity evidence in sex

11  cases does not offend fundamental principles of justice, *id.* at 913-15, and that California

12  Evidence Code section 352 provides an adequate safeguard against undue prejudice, *id.* at

13  915-17.  The court of appeal rightly noted that it is bound by the California Supreme Court's

14  holding.  *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal. 2d 450, 455 (1962).

15       Finally, the United States Supreme Court has never held that the admission of

16  evidence of prior crimes violates the right to due process.  *See Estelle v. McGuire*, 502 U.S.

17  62, 75 n. 5 (1991) (declining to rule on the constitutionality of propensity evidence).

18  Because federal habeas relief may not be granted unless the state court decision was

19  contrary to, or an unreasonable application of, clearly established federal law as

20

21       [2]Section 1108 of the California Evidence Code provides: "[In a criminal action in which
     the defendant is accused of a sexual offense, evidence of the defendant's commission of
22   another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence
     is not inadmissible pursuant to Section 352."

23       [3]Section 352 of the California Evidence Code provides: "The court in its discretion may
     exclude evidence if its probative value is substantially outweighed by the probability that its
24   admission will (a) necessitate undue consumption of time or (b) create substantial danger of
     undue prejudice, of confusing the issues, or of misleading the jury."
25

26       Rule 403 of the Federal Rules of Evidence provides: "Although relevant, evidence may
     be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
27   confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of
     time, or needless presentation of cumulative evidence."

28

United States District Court

For the Northern District of California

1   determined by the Supreme Court, *see* 28 U.S.C. § 2254(d)(1), when there is no "clearly

2   established law as determined by the United State Supreme Court," as here, habeas relief

3   is barred.

4       The state appellate courts' rejection of petitioner's sole claim was neither contrary to,

5   nor an unreasonable application of, clearly established United States Supreme Court

6   authority.

7       Petitioner also raises a claim that section 1108 violates the Equal Protection Clause

8   by treating sex offenders different from other classes of offenders.  The state appellate

9   court rejected this claim, explaining that sex offenders were not similarly situated to other

10  offenders, and noted that the rational basis test was the appropriate standard for reviewing

11  a challenge to the state's treatment of offenders.  Exh. 8 at 5-6.  The state court, relying on

12  *People v. Fitch*, 55 Cal. App. 4th 172, 184-85 (1997), concluded that the legislature had a

13  rational basis for singling out sex offenders under section 1108 in light of the nature of sex

14  offenses, and that "both their seriousness and their secretive commission" resulted in

15  credibility contests.  Exh. 8 at 6.

16      In *LeMay*, the Supreme Court held that "Rule 414 does not discriminate against any

17  group of individuals on the basis of a suspect or quasi-suspect class.  Sex offenders are

18  not a suspect class."  260 F.3d at 1030.  It further held that a child molester does not have

19  a

20              fundamental right to [ ] a trial free from relevant propensity
            evidence that is not unduly prejudicial. . . .  Because Rule 414
21          does not burden a fundamental right, and because sex
            offenders are not a suspect class, Rule 414 is constitutional if it
22          bears a reasonable relationship to a legitimate government
            interest.  Prosecuting crime effectively is certainly a legitimate
23          government interest.  Rule 414 furthers that interest by allowing
            prosecutors to introduce relevant evidence to help convict sex
24          offenders.

25  *Id.* at 1030-31.

26      As discussed above, Rule 414 is analogous to section 1108; therefore, it is

27  reasonable to conclude that equal protection is no more violated under section 1108.

28

7

1    Accordingly, the state court's determination was not an unreasonable application of

2    Supreme Court precedent.

3    **B.    Admission of Certain "Propensity" Evidence**

4         Petitioner next claims that the trial court erred in admitting Barbara's testimony.

5    Specifically, Petitioner contends that the trial court violated his due process rights by ruling

6    that the evidence of his prior sexual assault was more probative than prejudicial under

7    California Evidence Code section 352.  Petitioner argues that the evidence was highly

8    prejudicial and resulted in an unfair trial in violation of the Sixth and Fourteenth

9    Amendments.

10        1.    *Exhaustion Requirements*

11        As a preliminary matter, Respondent argues that Petitioner's claim is unexhausted

12   because he did not present this claim to the California Supreme Court.  In his traverse,

13   Petitioner argues that all claims in his petition have been presented to the California

14   Supreme Court.  A defendant convicted in state court must first exhaust all available state

15   remedies before turning to the federal courts for habeas relief.  28 U.S.C. § 2254(b).

16   However, an application for a writ of habeas corpus "may be denied on the merits,

17   notwithstanding the failure of the applicant to exhaust the remedies available in the courts

18   of the State." *Id.* at § 2254(b)(2).  As discussed below, the court finds that Petitioner's

19   claim must be denied on the merits; thus it may consider his claim without determining

20   whether he properly exhausted the issue in state court.

21        2.    *Legal Standard*

22        Permitting a jury to hear evidence of prior crimes or bad acts may violate due

23   process. *Marshall v. Lonberger*, 459 U.S. 422, 438-39 n.6 (1983); *Fritchie v. McCarthy*,

24   664 F.2d 208, 212 (9th Cir. 1981) (citing *Spencer v. Texas*, 385 U.S. 554, 561 (1967)).

25   However, a state court's procedural or evidentiary ruling is not subject to federal habeas

26   review unless the ruling violates federal law, either by infringing upon a specific federal

27   constitutional or statutory provision or by depriving the defendant of the fundamentally fair

28

**United States District Court**
For the Northern District of California

8

United States District Court
For the Northern District of California

trial guaranteed by due process. *Pulley v. Harris*, 465 U.S. at 41; *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Accordingly, a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).

The admission of other crimes evidence violates due process where there are no permissible inferences the jury can draw from the evidence (in other words, no inference other than conduct in conformity therewith). *Jammal*, 926 F.2d at 920. But it is generally upheld where: (1) there is sufficient proof that the defendant committed the prior act; (2) the prior act is not too remote in time; (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value of admitting evidence of the prior act is not substantially outweighed by any prejudice the defendant may suffer as a result of its admission. *McDowell v. Calderon*, 107 F.3d 1351, 1366 (9th Cir.) (sentencer may rely on prior criminal conduct not resulting in a conviction if the evidence has "some minimal indicium of reliability beyond mere allegation"), *amended*, 116 F.3d 364 (9th Cir. 1997), *vacated in part by* 130 F.3d 833, 835 (9th Cir. 1997) (en banc), *cert. denied*, 523 U.S. 1103.

A statute or rule of evidence allowing admission of evidence of prior crimes to show a propensity to commit the charged offense does not facially violate due process if the evidence to be admitted is subject to a balancing test by the trial court. *LeMay*, 260 F.3d at 1031 (new federal rules of evidence allowing evidence of prior sexual offenses to show a propensity to commit the charged offense do not violate due process because evidence is still subject to trial court balancing test which provides for meaningful appellate review).

3.      Application to the Case at Bar

Applying this standard to the present case, Petitioner's claim must fail. The state court of appeal correctly observed that the evidence was admissible for a legitimate

United States District Court

For the Northern District of California

1   purpose and gave rise to a permissible inference.  In reaching its decision, the court of

2   appeal considered the factors listed above and determined that the crucial factor was "the

3   striking similarity between certain aspects of the charged offenses against Suzanne and

4   [Petitioner's] prior offenses against Barbara.  Exh. 8 at 7-8.  Specifically, the court of appeal

5   considered the following:

> In both cases, [Petitioner] deliberately exploited his position as
> the domineering and threatening male adult in the household to
> perpetrate years of sexual abuse on a vulnerable female child in
> the family.  While details surrounding the uncharged and
> charged incidents differ in some respects, the incidents
> themselves were remarkably alike.  [Petitioner] began molesting
> Barbara when she was nine years old, shortly after he moved in
> with her mother.  The molestation occurred continuously from
> 1969 to 1977. [Petitioner] began molesting Suzanne when she
> was seven years old, shortly after he moved in with her mother.
> He molested Suzanne continuously from 1990 to 1998.  In both
> cases, [Petitioner] engaged in a consistent pattern of control
> and extreme physical abuse of family members in conjunction
> with the sexual abuse. [Petitioner] used the same modus
> operandi (i.e., having the mother take the other children out of
> the house) to get the girls alone so he could molest them.
> [Petitioner] engaged in the same type of sexual acts with both
> girls – [Petitioner] sat or laid on the edge of a bed and had the
> girls orally copulate him.  In both cases, he sometimes forced
> them to swallow his semen after he ejaculated. [Petitioner]
> threatened both of the victims with dire consequences if they
> revealed the molestations.  He had sexual intercourse with
> Barbara when she was only nine years old, and threatened to
> force Suzanne to have sexual intercourse once she turned 16,
> telling her she was old enough.

19  Exh. 8 at 8-9.

20      In addition to similarity, which it considered the crucial factor, the court of appeals

21  also considered the other *McDowell* factors and determined that "there was a factually

22  justified and reasonable basis for the trial court's conclusion that this evidence was more

23  probative than prejudicial under section 352."  Exh. 8 at 9-11.  Thus, the admission of

24  Barbara's testimony was not arbitrary and, given the "remarkable similarities" between the

25  prior and current sexual assaults, as well as the trial court's careful balancing of the

26  relevant factors, it was not so prejudicial that it rendered the trial fundamentally unfair.

27  Accordingly, this court cannot disturb on due process grounds the state court's decision to

28

**United States District Court**
For the Northern District of California

1   admit Barbara's testimony.  *Walters*, 45 F.3d at 1357.

2   **C.   Instructional Error**

3      Petitioner next argues that the instruction the jury was given on how to evaluate

4   Barbara S.'s testimony violated his federal constitutional right to have his guilt proven

5   beyond a reasonable doubt.  He expresses the concern that the jury may have been

6   confused about the burden of proof and may have found him guilty of the charged crimes

7   based on proof less than beyond a reasonable doubt.

8      The trial court instructed on the use of Barbara S.'s testimony with the 1999 revised

9   version of CALJIC No. 2.50.01, which in written form told the jury:

10
11     Evidence has been introduced for the purpose of showing that the
    defendant engaged in a sexual offense on one or more occasions
    other than that charged in the case. . . .

12     If you find that the defendant committed a prior sexual offense, you
13  may, but are not required to, infer that the defendant had a disposition
    to commit the same or similar type sexual offenses.  If you find that the
    defendant had this disposition, you may, but are not required to, infer
14  that he was likely to commit and did commit the crime or crimes of
    which he is accused.

15
16     However, if you find *by a preponderance of the evidence* that the
    defendant committed [one or more] prior sexual offenses, that is not
17  sufficient by itself to prove *beyond a reasonable doubt* that he
    committed the charged crimes.  The weight and significance of the
    evidence, if any, are for you to decide.

18
19     You must not consider this evidence for any other purpose.

20  Exh. 4 at 350 (emphasis added).

21     After instructing the jury on the definition of the charged crimes, the court also

22  delivered CALJIC 2.50.1 (Evidence of Other Crimes by the Defendant Proved by a

23  Preponderance of the Evidence) and CALJIC 2.50.2 (Definition of Preponderance of the

24  Evidence).  Exh. 4 at 356-57.  The jury was also instructed with CALJIC 2.90 regarding

25  reasonable doubt, and CALJIC 2.01 regarding sufficiency of the evidence where

26  circumstantial evidence has been presented.  Exh. 4 at 338, 360.  Based on these different

27  standards, Petitioner argues that the jury could have determined, by a preponderance of

28

United States District Court
For the Northern District of California

1   the evidence, that he molested Barbara S., and then concluded that he had the propensity

2   to and did molest Suzanne, without passing that inference through a proof beyond a

3   reasonable doubt filter.

4        A challenge to a jury instruction solely as an error under state law does not state a

5   claim cognizable in federal habeas corpus proceedings.  *Estelle v. McGuire*, 502 U.S. 62,

6   71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner

7   must show that the ailing instruction by itself so infected the entire trial that the resulting

8   conviction violates due process.  *Id.* at 72.  The instruction may not be judged in artificial

9   isolation, but must be considered in the context of the instructions as a whole and the trial

10  record.  *Id.*  In other words, the court must evaluate jury instructions in the context of the

11  overall charge to the jury as a component of the entire trial process.  *United States v.*

12  *Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977));

13  *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.), *cert. denied*, 488 U.S. 861 (1988).  The

14  court must inquire whether there is a "reasonable likelihood" that the jury erroneously

15  applied the instruction in a way that violates the Constitution.  *Estelle*, 502 U.S. at 72 & n.4.

16       Here, the court of appeal concluded that the instructions did not allow the jury to

17  infer that Petitioner committed the charged crime solely from proof that he committed the

18  prior acts.  The court noted that both the prosecutor and defense counsel stressed that the

19  jury had to find Petitioner guilty of the charged crimes beyond a reasonable doubt, and that

20  all of the related standard instructions were given, which clarified the prosecution's burden

21  of proof.  Exh. 8 at 12.  This court agrees.  CALJIC No. 2.50.01 explicitly instructed the jury

22  that "if you find by a preponderance of the evidence that the defendant committed prior

23  sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he

24  committed the charged crimes."[4]  Given such a specific mandate, it is not reasonably likely

25

26       [4] This language from the 1999 revised instructions distinguishes this case from *Gibson*
    *v. Ortiz*, 387 F.3d 812 (9th Cir. 2004), in which the Ninth Circuit held that a petitioner's due
27  process rights were violated when the trial court gave the 1996 version of the 2.50.01
    instruction.  *Id.* at 814.  The prior version of 2.50.01 allowed a jury to consider evidence of prior
28  uncharged sex offenses and to infer the defendant's guilt of the current offense from the prior

United States District Court

For the Northern District of California

1   that the jury might believe they could convict on a preponderance standard.

2       Moreover, the other jury instructions bolster this conclusion.  The trial court

3   instructed the jury with CALJIC No. 2.90 that the prosecution had "the burden of proving

4   [Petitioner] guilty beyond a reasonable doubt," (Exh. 4 at 360), and with CALJIC No. 2.01,

5   which provides that "each fact which is essential to complete a set of circumstances

6   necessary to establish the defendant's guilt must be proved beyond a reasonable doubt.  In

7   other words, before an inference essential to establish guilt may be found to have been

8   proved beyond a reasonable doubt, each fact or circumstance upon which such inference

9   necessarily rests must be proved beyond a reasonable doubt."  Exh. 4 at 338.

10      The trial court also instructed the jury pursuant to CALJIC No. 1.01 (instructions

11  must be considered as a whole), (Exh. 4 at 333), CALJIC No. 2.02 (sufficiency of

12  circumstantial evidence to prove specific intent), (Exh. 4 at 339), CALJIC Nos. 2.21.2 &

13  2.27 (directing jurors to consider all of the evidence adduced at trial in reaching its verdict),

14  (Exh. 4 at 346 & 349), CALJIC Nos. 10.41, 10.42.6, 10.45, & 10.49 (defining elements of

15  the charged offenses and requiring jury find each element proven beyond a reasonable

16  doubt for a guilty verdict), (Exh. 4 at 351-55, 362-66, 368), CALJIC No. 4.71.5 ("In order to

17  find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable

18  doubt the commission of . . . a specific act or acts constituting that crime within the period

19  alleged."), (Exh. 4 at 371), and CALJIC Nos. 2.50.1 & 2.50.2 (explaining meaning and

20  _____

21  uncharged offenses.  *Id.* 817-18.  As the 1996 version of CALJIC 2.50.1 required only a
    preponderance of the evidence to prove the uncharged offenses, CALJIC 2.50.1 and 2.50.01
22  together allowed a jury to find a defendant guilty without requiring proof beyond a reasonable
    doubt.  *Id.* at 822.  The heart of the *Gibson* decision is the court's conclusion that the pre-
23  revision instructions given in that case provided "two routes of conviction, one by a
    constitutionally sufficient standard and one by a constitutionally deficient one."  *Id.* at 823.
24  When it is impossible to know whether a jury used the impermissible legal theory or the one
    which meets constitutional requirements, the unconstitutionality of one of the routes requires
25  that the conviction be set aside.  *Id.* at 825.  In the revised version of the instruction, however,
    the constitutionally-deficient route was blocked off:  The revised instruction tells the jury in
26  unequivocal words that it cannot find petitioner guilty beyond a reasonable doubt just because
    it had found by a preponderance of the evidence that he committed prior bad acts.  Indeed,
27  *Gibson* suggested that the revised instruction would pass constitutional muster.  387 F.3d at
    818-19.
28

United States District Court

For the Northern District of California

1   applicability of preponderance standard, and instructing jury, "You should consider all of the

2   evidence bearing upon every issue regardless of who produced it."). Exh. 4 at 356-57.

3   Given that juries are presumed to follow their instructions, *Weeks v. Angelone*, 528 U.S.

4   225, 234 (2000), there is no reasonable likelihood that the jury, in considering the

5   instructions as a whole, erroneously applied CALJIC 2.50.01 in a way that violates the

6   Constitution.

7        The parties' closing arguments further limited the possibility of any misinterpretation

8   or confusion by reinforcing the fact that the prosecution must still prove each element of

9   each offense beyond a reasonable doubt before Petitioner could be found guilty. *See* Exh.

10  1 at 1070, 1077 (prosecution noting burden of proof for offenses beyond a reasonable

11  doubt); Exh. 1 at 1094 (defense argument explaining prosecution's burden of proof was

12  beyond a reasonable doubt); Exh. 4 at 1138, 1146 (prosecution rebuttal argument

13  reiterating that prosecution's burden was beyond a reasonable doubt). These arguments

14  further served to eliminate any potential misunderstanding of the instructions. *See, e.g.,*

15  *Middleton v. McNeil*, 541 U.S. 433 (2004) (explaining state court may assume prosecution's

16  argument resolved legal ambiguity in instructions, particularly when the prosecution's

17  argument resolves ambiguity in favor of defendant).

18       On this record, the appellate court's conclusion, that it is not reasonably likely a jury

19  could interpret the instructions to authorize conviction of the charged offenses based on a

20  lowered standard of proof, is a reasonable application of Supreme Court precedent.

21  **D.    Effective Assistance of Counsel**

22       In Petitioner's final claim, he asserts that he had an irreconcilable conflict with his

23  trial counsel, and the state court's denial of his two *Marsden*[5] motions violated his Sixth

24  Amendment right to counsel. Petitioner brought the first *Marsden* motion shortly before the

25  start of trial, after the trial court ruled pursuant to section 1108 that the prosecution could

26  introduce Barbara S.'s testimony about his prior sexual assault. Exh. 2. Petitioner

27  ───────────────

28       [5]  *People v. Marsden*, 2 Cal. 3d 118 (1970).

14

United States District Court

For the Northern District of California

1   disagreed with the court's ruling and presented cases to his counsel that he felt showed the

2   court was wrong.  In denying the first *Marsden* motion, the court found that counsel had

3   properly represented Petitioner and, if there was a personality conflict, it was a result of the

4   time pressure under which Petitioner's counsel had to review the cases rather than lack of

5   due diligence.[6]  Exh. 2 at 8-9.  The court permitted counsel time to review the cases and to

6   file additional motions if necessary.  Exh. 2 at 8.

7          Petitioner brought his second *Marsden* motion after the jury found him guilty of the

8   charged offenses.  Exh. 3.  Petitioner explained that he no longer trusted his attorney and

9   informed the court that he was filing a civil rights complaint against his attorney in federal

10  district court and was going to send a letter to the state bar.  Exh. 3 at 3.  Petitioner

11  complained that counsel "failed to call any witnesses for [him]," but did not specify any

12  witnesses that should have been called.  Petitioner also asserted that counsel called him

13  names and tried to intimidate him by telling him during the plea bargaining stage that the

14  judge had said he was going to lose the case.  Exh. 3 at 4.  Petitioner also complained that

15  counsel "should have done a little more investigating in some of the motions that were

16  made," referring back to the earlier dispute about the prior sexual assault evidence.  Exh. 3

17  at 4-5.

18         After hearing counsel's response to Petitioner's claims, and after giving Petitioner

19  the opportunity to reply, the court made the following findings:

20             All right.  To the extent that there are conflicts between the
       statements made by Mr. Harrington and [counsel] this morning, the
21     Court believes [counsel] and I disbelieve Mr. Harrington for the
       following reasons.  The Court observed this trial.  It was a lengthy
22     trial.  The Court indicated I believe at one point on the record that
       there were probably as many motions in this trial as I had heard in
23     any other trial, and perhaps more.
              That as to the trust factor, the Court should observe for this
24     purpose that during the course of the trial, Mr. Harrington was in
       frequent communication with the investigator as well as [counsel]
25     and sometimes talking as the witness was in fact testifying.  I don't
       know what Mr. Harrington was attempting to communicate, but that
26

27         [6] Petitioner provided the cases to counsel less than one hour prior to the hearing.  Exh.
    2 at 6.
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

this occurred frequently.  Mr. Harrington also had paper upon which he could write, and I noted several times for myself that Mr. Harrington was indeed writing.

That [counsel] did call witnesses, that there were a number of duplicated witnesses from both lists, that many of those witnesses were indeed called by the People, and that [counsel] cross-examined witnesses that were indeed on his list of witnesses to call.

I was more than impressed with the quality of investigation that was done in this case.  I have no idea except for what was just represented by [counsel] how many investigative hours were spent or how many pages of report were written.  But I do know that there was extensive investigation in this case and that in fact at your - at your request or [counsel's] request and your concurrence, Mr. Harrington, that the trial was indeed continued a number of times. And I'm not going to go back through the record here and try to figure out how many, but a number of times so that further investigation could be made.

I distinctly remember when reports were presented sometimes for the first time to [counsel], he would come and say, "I'm going to have to have a continuance in order to investigate these things."  And some of those and many of those were on the uncharged prior acts that you referred to.  I don't know if you recall, Mr. Harrington, but the Court, as a result of motions made by your attorney, kept out one of the uncharged prior victims in this case. And I did not allow that testi[mony] to come in.

The Defendant: No, but you allowed the one that hung me.

The Court: I allowed what was permitted under - and which I was required to do under the law.  I kept out one that I did not feel was a relevant.

. . . [¶] . . .

But in any event, I kept out, as a result of investigation and preparation that the investigator and [counsel] did, kept out items of evidence.  I limited the prosecution's . . . examination into certain areas . . . [¶] . . .  I kept out any number of items, and I think the record is fairly clear and will be clear as to what was kept out.  But it was - what was kept out was as a direct consequence of the preparation and investigation and the motion work done by investigator and attorney.

Exh. 3 at 10-12.

The court found that "[counsel] has more than adequately represented you and is capable of continuing to adequately represent you."  Exh. 3 at 12, 13.  The court added: "If there's been some breakdown, Mr. Harrington, if there's some breakdown in relationship between you and [counsel] such that it would make it impossible for [counsel] to represent you, then I find that that was as a direct consequence of actions by you and not by [counsel]."  Exh. 3 at 13.

16

United States District Court

For the Northern District of California

1    Petitioner argues that the trial court erred in failing to grant his *Marsden* motions

2  because he had a "conflict with and had lost all hope and trust in" his court-appointed

3  counsel.  Petitioner also contends that the trial court conducted rushed hearings on the

4  motions.

5    1.    *Legal Standard*

6    The Sixth Amendment grants criminal defendants who can afford to retain counsel a

7  qualified right to hire counsel of their choice.  *Wheat v. United States*, 486 U.S. 153, 159,

8  164 (1988).  A criminal defendant who cannot afford to retain counsel, however, has no

9  right to counsel of his own choosing.  *Id.* at 159.  The Sixth Amendment guarantees

10 effective assistance of counsel, not a "meaningful relationship" between an accused and

11 his counsel.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  The essential aim is "to guarantee an

12 effective advocate for each criminal defendant rather than to ensure that a defendant will

13 inexorably be represented by the lawyer whom he prefers."  *Wheat*, 486 U.S. at 159.

14    Nonetheless, to compel a criminal defendant to undergo a trial with the assistance of

15 an attorney with whom he has become embroiled in irreconcilable conflict is to deprive the

16 defendant of any counsel whatsoever.  *Daniels v. Woodford*, 428 F.3d 1181, 1197-1201

17 (9th Cir. 2005).  Thus, if a defendant expresses dissatisfaction with counsel, the court

18 should conduct an inquiry to determine if an irreconcilable conflict exists.  *Brown v. Craven*,

19 424 F.2d 1166, 1170 (9th Cir. 1970).  "However, not every conflict or disagreement

20 between the defendant and counsel implicates Sixth Amendment rights."  *Schell v. Witek*,

21 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc).  On federal habeas review, the issue is not

22 whether the trial court abused its discretion in denying a motion to substitute counsel, but

23 whether constitutional error occurred.  *Id.* at 1025.  Thus, "the basic question is simply

24 whether the conflict between [defendant] and his attorney prevented effective assistance of

25 counsel."  *Id.* at 1026.  That is, the habeas court considers whether the trial court's denial of

26 the motion "actually violated [the petitioner's] constitutional rights in that the conflict

27 between [the petitioner] and his attorney had become so great that it resulted in a total lack

28

17

United States District Court

For the Northern District of California

1  of communication or other significant impediment that resulted in turn in an attorney-client

2  relationship that fell short of that required by the Sixth Amendment." *Id.*

3      To resolve this question, the court must ascertain "(1) the nature and extent of the

4  conflict between [the defendant] and his attorney, and (2) whether that conflict deprived [the

5  defendant] of the representation to which he was entitled by the Sixth Amendment." *Id.* at

6  1027; *see also United States v. Mills*, 597 F.2d 693, 700 (9th Cir. 1979) (court considers

7  whether the conflict was so great that it resulted in a "total lack of communication

8  preventing an adequate defense").  In order for substitution of counsel to be constitutionally

9  compelled, there must be a complete breakdown in communication; mere friction and

10  disagreement does not require new counsel. *United States v. George*, 85 F.3d 1433, 1439

11  (9th Cir. 1996).  In addition, strategic differences do not require substitution; rather, the

12  attorney is entitled to make tactical decisions, "even in the face of his client's

13  incomprehension or even explicit disapproval." *Schell*, 218 F.3d at 1026 & n.8 (internal

14  quotation omitted).  And the mere fact that the defendant uses "buzz words" from case law

15  to claim a "complete and total failure of communication" does not require substitution if the

16  evidence does not substantiate the claim. *United States v. McDaniel*, 995 F. Supp. 1095,

17  1097 n.6 (C.D. Cal. 1998).

18      2.    *Application to the Case at Bar*

19      Based on this standard, the court finds that Petitioner's claim is without merit.  The

20  state court's factual findings that defense counsel conducted full and adequate

21  investigation into the charges, presented witnesses, maintained communication, and

22  diligently represented Petitioner at trial are fully supported by the record and have not been

23  rebutted by Petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In his

24  first *Marsden* motion, Petitioner disagreed with the trial court's admission of Barbara S.'s

25  testimony and argued that counsel failed to consider cases he wanted him to consider.

26  The trial court found that any conflict was a result of the lack of time Petitioner gave his

27  counsel to review the cases, having presented them less than one hour prior to the

28

United States District Court

For the Northern District of California

1   *Marsden* hearing.  The court permitted counsel time to review the cases and to file

2   additional motions if necessary, and there is no indication that a conflict on this issue

3   persisted.

4        As to the second *Marsden* hearing, Petitioner raised several issues, none of which

5   the trial court found constituted a complete breakdown in the attorney-client relationship.

6   Petitioner argued that counsel failed to call any witnesses for him.  The court, however,

7   found that counsel "did call witnesses, that there were a number of duplicated witnesses

8   from both lists, that many of those witnesses were indeed called by the People, and that

9   [counsel] cross-examined witnesses that were indeed on his list of witnesses to call."  As to

10  witnesses that counsel cross-examined rather than calling, he stated his approach was to

11  cross-examine the witnesses that were also on the People's witness list rather than calling

12  them again in the defense case.  There is no indication that Petitioner objected to this

13  tactic.  Regardless, as stated above, strategic differences do not require substitution, and

14  the attorney is entitled to make tactical decisions, even in the face of his client's explicit

15  disapproval.  *Schell*, 218 F.3d at 1026 & n.8.

16       Petitioner also argued that a conflict existed because he filed a civil rights complaint

17  against counsel in federal district court and he intended to send a letter to the state bar.

18  While a lawsuit between a defendant and counsel can potentially create a conflict of

19  interest, the mere fact that Petitioner threatened a lawsuit does not create an actual

20  conflict.  As stated by the Ninth Circuit, "finding an actual conflict from a mere threat would

21  allow defendants to manufacture a conflict in any case. We decline to adopt such an

22  unbounded rule."  *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998).  Petitioner

23  does not pursue this issue in his First Amended Petition and there is no indication that his

24  lawsuit stated a valid claim[7]; thus he has failed to rebut the trial court's finding by clear and

25  convincing evidence.  28 U.S.C. § 2254(e)(1).

26  ───────────────

27       [7] In fact, while it appears that Petitioner may have filed a complaint in this district against
    his counsel, that complaint was dismissed for failure to state a claim.  *See Harrington v.*
28  *Hamilton*, C-00-0458 EDL, Doc. #4.

United States District Court

For the Northern District of California

1    Petitioner also argued that counsel called him names and tried to intimidate him.

2  Counsel denied both allegations.  In denying Petitioner's motion on this ground, the trial

3  court found that despite conflicts between statements made by Petitioner and counsel, it

4  believed counsel and disbelieved Petitioner based on the court's observations during trial.

5  Petitioner has failed to rebut this finding.  Even assuming that Petitioner's argument was

6  correct, he has failed to demonstrate that the conflict resulted in a deficient performance by

7  counsel which adversely affected his trial.  *Mickens v. Taylor*, 535 U.S 162, 166 (2002) ("As

8  a general matter, a defendant alleging a Sixth Amendment violation must demonstrate a

9  reasonable probability that, but for counsel's unprofessional errors, the result of the

10 proceeding would have been different.") (internal quotation omitted).  Given the record in

11 this matter, which reflects diligent representation by counsel, Petitioner has failed to meet

12 his burden.

13    Petitioner also complained that counsel "should have done a little more investigating

14 in some of the motions that were made," referring back to the earlier dispute about the prior

15 sexual assault evidence.  However, the trial court found that it "was more than impressed

16 with the quality of investigation" that was done in the case, and that the trial was continued

17 a number of times to permit further investigation by counsel.  Moreover, given that

18 Evidence Code section 1108 permits prior sexual offenses as evidence of a propensity to

19 commit such acts, and that the trial court determined the probative value of Barbara S.'s

20 testimony outweighed its prejudicial effect, Petitioner has failed to show that any further

21 investigation would have prevented her testimony.  Instead, Petitioner's argument is more a

22 challenge to 1108 than a legitimate claim of failure of his counsel to investigate.

23    Finally, the court notes that Petitioner has not rebutted the trial court's finding that, if

24 a conflict did exist, he was its sole source.  As noted above, Petitioner is entitled only to the

25 effective assistance of counsel, not counsel whom he likes or with whom he gets along.

26 *See Morris v. Slappy*, 461 U.S. at 10, 13-14; *United States v. George*, 85 F.3d at 1439.

27    The California appellate court's rejection of petitioner's ineffective assistance claim

28

20

1   was not contrary to, or an unreasonable application of, clearly established federal law.

2   Accordingly, Petitioner is not entitled to habeas relief on this claim.

3                                    **CONCLUSION**

4        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

5   clerk shall close the file.

6        **IT IS SO ORDERED.**

7

8   Dated: September 17, 2007.

9

10   _____

11   PHYLLIS J. HAMILTON
     United States District Judge

**United States District Court**
For the Northern District of California